UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM HANNAH,

                Petitioner,

                                              Case Number 04-10288

v.                                          Honorable David M. Lawson

HELEN MARBERRY,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, William Hannah, presently on supervised release, has filed a *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The pleading alleges that the petitioner was denied early release benefits under 18 U.S.C. § 3621(e)(2)(B) in violation of federal law. The respondent opposes the petition on the grounds that the petitioner did not exhaust administrative remedies and that the challenged action is not subject to attack. The Court concludes that it would be futile to exhaust administrative remedies and that the petitioner's claims lack merit. The Court, therefore, will dismiss the petition.

I.

The petitioner pleaded guilty in the Western District of Michigan to being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). On March 22, 2004, he was sentenced to thirty-seven months in prison and two years of supervised release following imprisonment.

While incarcerated, the petitioner enrolled in a voluntary program for substance abusers. The program offers the possibility of early release to prisoners who were convicted of a nonviolent offense and who successfully complete the program. The question presented here is whether the petitioner is entitled to a reduction in his sentence for successful completion of the substance abuse

program. He contends that the Federal Bureau of Prisons ("the Bureau" or "the BOP") refused to grant him early release for his participation in the substance abuse program. He contends that the Bureau's decision to deny him program benefits is arbitrary and capricious and a violation of his constitutional rights to due process and equal protection of the law. He further contends that the Bureau did not promulgate a related program statement in compliance with procedures mandated by the Administrative Procedures Act (APA).

Since the filing of the present petition, the Court has been notified that the petitioner was released from prison on August 11, 2006. He is currently serving a sentence of supervised release.

II.

A.

Because the petitioner has been released from prison and is serving a sentence of supervised release, the Court must first address the preliminary questions of whether the petitioner is "in custody" within the meaning of 28 U.S.C. § 2241(c), and whether the petitioner's release from prison renders his claim moot.

In *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), the Supreme Court stated that "[i]t is clear, not only from the language of §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." Whether a habeas corpus petitioner is in custody for purposes of §§ 2241 and 2254 is determined at the time that the complaint is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). Although a prisoner's release from custody subsequent to the filing of the complaint may render his case moot, such a release does not affect the custody question. Moreover, the term "custody" is not

limited solely to physical confinement. *Sanders v. Freeman*, 221 F.3d 846, 850-51 (6th Cir. 2000). For instance, persons on parole, probation, bail or supervised release may be "in custody" for purposes of §§ 2241 and 2254. *See, e.g., Jones v. Cunningham*, 371 U.S. 236, 240-41 (1963) (parole); *Hensley v. Municipal Court*, 411 U.S. 345, 349 (1973) (bail); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989) (probation); *United States v. Zack*, 173 F.3d 431 (table), 1999 WL 96996 at *1 (6th Cir. February 1, 1999) (supervised release).

Here, the petitioner has apparently fully served his term of imprisonment for being a felon in possession of a firearm. However, the petitioner was in physical custody for that sentence when the petition was filed and remains on supervised release, a form of custody, at the present time. Therefore, this Court concludes that the petitioner has satisfied the habeas corpus "in custody" requirement.

Nor is this case moot. The issues of custody and mootness are distinct. *See, e.g., Ward v. Huron County Circuit Judge Knoblock*, 738 F.2d 134, 138-39 (6th Cir. 1984). A claim for the denial of early release benefits under 18 U.S.C. § 3621(e)(2)(B) is not rendered moot by the petitioner's release from physical confinement. *Magnin v. Beeler*, 110 F. Supp. 2d 338, 340 n.3 (D. N.J. 2000); *Camper v. Benov*, 966 F. Supp. 951, 952 n.1 (C.D. Cal. 1997); *see also McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (holding petitioner's claim to be live because "his supervised released dates [were] affected by [an] erroneous computation"). If so entitled, the petitioner would have been released from prison earlier, and his term of supervised release would have commenced on an earlier date. *Magnin*, 110 F.Supp.2d at 340 n.3; *Camper v. Benov*, 966 F. Supp. at 952 n.1; *see also McClain*, 9 F.3d at 505 (6th Cir. 1993). Therefore, if the Court deems the

petitioner's claim meritorious, the petitioner will receive a reduction in the term of his supervised release. *Magnin*, 110 F.Supp.2d at 240 n.3; *Camper*, 966 F. Supp. at 952 n.1.

<div align="center">B.</div>

An additional preliminary question is whether the petitioner exhausted administrative remedies for his claims. "It is well established that federal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted." *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981). The Bureau of Prisons maintains an administrative remedy program through which inmates may seek formal review of issues relating to any aspect of their confinement. *See* 28 C.F.R. § 542.10(a).

The petitioner concedes that he has not exhausted any administrative remedies. He contends that the exhaustion requirement is not jurisdictional and does not apply to habeas petitions filed under section 2241. Although section 2241 "does not specifically require federal prisoners to exhaust their administrative remedies before seeking habeas corpus in the federal district courts," federal courts impose the requirement in many cases. *Six v. U.S. Parole Comm'n*, 502 F. Supp. 446, 448 (E.D. Mich. 1980); *see also Hacker v. Federal Bureau of Prisons*, 2006 WL 2559792, *5 (E.D. Mich.) (slip copy) ("The Sixth Circuit has approved of the general principle that the Bureau of Prisons should be allowed the opportunity to consider the application of its policy to a habeas petitioner's claims before the federal courts entertain them.") (citing *Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001)).

The Court believes that it would be a waste of time and effort in this case for the petitioner to exhaust administrative remedies with the Bureau, because the Bureau's position is that persons convicted of an offense under 18 U.S.C. § 922(g) are not eligible for early release upon successful

<div align="center">-4-</div>

completion of a substance abuse program. *See* Resp. to Pet. for Writ of Habeas Corpus, Ex. 5, Bureau Program Statement at 18. In addition, the Bureau has made a preliminary determination that the petitioner is not eligible for early release because he was convicted of violating 18 U.S.C. § 922(g). *See* Resp. to Pet. for Writ of Habeas Corpus, Ex. 3, Notice of Residential Drug Abuse Program Qualification and Provisional § 3621(e) Eligibility at 2. When, as here, the Bureau has predetermined the disputed issue, the exhaustion requirement may be excused. *See McCarthy v. Madigan*, 503 U.S. 140, 148 (1992); *see also Boucher v. Lamanna,* 90 F. Supp.2d 883, 887 (N.D. Ohio 2000) (concluding that exhaustion of administrative remedies would be futile where the Bureau's policy was mandatory, the issue was a legal one, which the Bureau had consistently defended, and the potential for immediate release counseled timely consideration of the petitioner's case). Accordingly, the Court will excuse the petitioner's failure to exhaust administrative remedies and will proceed to address the merits of the petitioner's claims.

<div align="center">III.</div>

The petitioner seeks to have the Bureau re-screen him without regard to his conviction. He also wants the Bureau to grant him benefits, including early release, under 18 U.S.C. § 3621(e)(2)(B).

Pursuant to 18 U.S.C. § 3621(b), the Bureau must "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." To encourage successful participation in the program, the statute provides that

> [t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B).

<div align="center">-5-</div>

In 1997, the Bureau issued an interim regulation, which stated in part:

§ 550.58 Consideration for early release.

An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D, for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.

(a) Additional early release criteria.  (1)  As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

. . . .

(vi) Inmates whose current offense is a felony:

. . . .

(B) That involved the carrying, possession, or use of a firearm . . . .

62 Fed. Reg. 53691 (Oct. 15, 1997).  The effective date of this interim regulation was October 9, 1997, although the Bureau did not publish the regulation in the Federal Register until six days later on October 15, 1997.  *Id*. at 53690.  The Bureau sought comments on the rule until December 15, 1997.  *Ibid.*

The Bureau also issued a program statement that became effective on October 9, 1997.  The program statement  places offenses in categories for purposes of determining whether an inmate is eligible for benefits under the Bureau's substance abuse program.  Section 2 of the program statement states that "[a]n inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the Bureau of Prisons."  Resp. to Pet. for Writ of Habeas Corpus, Ex. 5, Bureau Program Statement at 1. Section 7 of the program statement lists offenses that preclude early release at the Director's

-6-

discretion even though the offenses may not be crimes of violence. The relevant language for purposes of the petitioner's case reads:

> Title 18, United States Code § 922(g). All offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits.

*Id*. at 18.

On December 22, 2000, the Bureau replaced its 1997 interim regulation with a final regulation, which adopted the interim rule without any changes. *See* 65 Fed. Reg. 80748 (Dec. 22, 2000). The petitioner enrolled in the Bureau's substance abuse program on June 7, 2004. *See* Resp. to Pet., Ex. 4, Inmate Drug Program History.

<div align="center">A.</div>

The petitioner alleges that the Bureau's decision to deny him benefits under section 3621(e) is arbitrary and capricious. Pursuant to 5 U.S.C. § 706(2)(A), a reviewing court must set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. As the Supreme Court has explained:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, [courts] must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (internal citations omitted).

The Supreme Court has determined that the Bureau's internal agency guidelines are entitled to "some deference." *Reno v. Koray*, 515 U.S. 50, 61 (1995). Moreover, "[n]othing in the statute requires the BOP to grant early release to any eligible prisoner." *Orr v. Hawk*, 156 F.3d 651, 653 (6th Cir. 1998). The Bureau has the authority, but not the duty, to reduce a prisoner's term of imprisonment. *Lopez v. Davis*, 531 U.S. 230, 241 (2001). "Commission of a 'nonviolent offense' makes a prisoner eligible for consideration but does not require the Bureau to grant the boon he seeks." *Bush v. Pitzer*, 133 F.3d 455, 457 (7th Cir. 1997). The Bureau "has substantial discretion in its decisionmaking." *Orr v. Hawk*, 156 F.3d at 653; *see also Jacks v. Crabtree*, 114 F.3d 983, 984 (9th Cir. 1997) (noting that the statute gives the Bureau broad discretion to grant or deny the one-year reduction in sentence).

Use of the word "may" in section 3621(e) also gives the Bureau discretion to exclude categories of inmates from early release; individualized determinations are not necessary. *See Lopez*, 531 U.S. at 240-44; *accord Bowen v. Hood,* 202 F.3d 1211, 1219 (9th Cir. 2000) (stating that the Bureau's broad discretion in administering the sentence-reduction program "extends to the creation of categorical exclusions"); *Brown v. Scibana*, 86 F. Supp. 2d 702, 705 (E.D. Mich. 2000) ("Nothing in § 3621(e)(2)(B) mandates that the BOP exercise its discretion on an individual, rather than categorical, basis."). The Supreme Court concluded in *Lopez v. Davis* that the Bureau's decision to exclude from eligibility inmates whose offenses involved firearms was reasonable and appropriate. *See Lopez*, 531 U.S. at 243. Thus, the categorical denial of early release to certain inmates based on the inmate's conviction, as opposed to matters collateral to the actual conviction, is a valid exercise of the Bureau's discretion. *Id.* at 240-41; *Scibana*, 86 F. Supp. 2d at 705-06.

-8-

There is nothing unreasonable in the Bureau's common-sense decision that there is a significant potential for violence from criminals who possess firearms. *Bowen*, 202 F.3d at 1219.

Nor has the petitioner shown that the Bureau relied on factors which Congress did not intend it to consider, failed to consider an important aspect of the problem, offered an explanation that runs counter to evidence before the agency, or made an implausible decision. Therefore, the Bureau's categorical denial of early release to inmates convicted of being a felon in possession of a firearm is not arbitrary or capricious.

B.

The petitioner alleges next that the Bureau's decision to deny him benefits violates his right to due process of law. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process law . . . ." U.S. Const. amend. V.

The petitioner's due process claim fails because section 3621(e)(2)(B) states that the Bureau *may* reduce a prisoner's sentence for successful completion of a substance treatment program. Neither the Constitution, nor section 3621(e)(2)(B), nor the Bureau's regulation created a liberty interest in early release. *Orr*, 156 F.3d at 654; *Piccolo v. Lansing*, 939 F. Supp. 319, 321 (D. N.J. 1996). "Where an interest is not a protected one, there is no cognizable harm to the individual when deprived of that interest." *Orr*, 156 F.3d at 654 (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Therefore, the Bureau's denial of a reduction in the petitioner's sentence does not deprive the petitioner of a liberty interest protected by the Due Process Clause. *See ibid.*; *Piccolo*, 939 F. Supp. at 321.

C.

-9-

The petitioner also contends that the Bureau's decision to deny him benefits violates his right to equal protection of law. In support of this contention, the petitioner has named four federal inmates who apparently were granted early release for successfully completing the Bureau's substance abuse program. Three of the inmates were convicted of gun-related offenses, and one of the inmates was convicted of a drug offense, but his sentence was enhanced due to possession or use of a gun in connection with the offense.

"The Equal Protection Clause requires public institutions to 'treat similarly situated individuals in a similar manner.'" *Buchanan v. Bolivar, Tenn.*, 99 F.3d 1352, 1360 (6th Cir. 1996) (quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988)). However, the circumstances of the named inmates' release is not explained in any detail in the habeas petition. Even if some inmates with similar convictions were granted early release under section 3621(e)(2)(B), the petitioner's assertion "indicates mere inconsistencies or erroneous decisions in prison management, which do not by themselves constitute a cognizable equal protection claim." *Clapper v. Wisconsin Dep't of Corrs*, 946 F. Supp. 672, 680 (E.D. Wisc. 1996) (citing *Shango v. Jurich*, 681 F.2d 1091, 1103-05 (7th Cir. 1982), and *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978)); *Sizemore v. Marberry*, 2005 WL 1684132, *5 (E.D. Mich. July 14, 2005). Therefore, the petitioner has not established an equal protection claim.

To the extent that the petitioner is alleging discriminatory conduct by the Bureau against persons convicted of being a felon in possession of a firearm, this claim likewise has no merit. Although "inmates are protected by the Equal Protection Clause of the Fourteenth Amendment," *Hluchan v. Fauver*, 480 F. Supp. 103, 109 (D. N. J. 1979), a governmental classification generally will be upheld if it bears a rational relationship to a legitimate governmental end and does not

-10-

burden a fundamental right or target a suspect class. *Romer v. Evans*, 517 U.S. 620, 631 (1996). "Prisoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), and they have no constitutional or inherent right to release before the expiration of a valid sentence, *Greenholtz v. Inmates of Neb. Penal and Corr'l Complex*, 442 U.S. 1, 7 (1979). Therefore, the Bureau's decision to exclude a prisoner from eligibility for early release under section 3621(e)(2)(B) must be only rationally related to a legitimate governmental interest. *Perez v. Hemingway*, 157 F. Supp. 2d 790, 795-96 (E.D. Mich. 2001) (citing *Wottlin v. Fleming*, 136 F.3d 1032, 1036-37 (5th Cir. 1998)); *Paydon v. Hawk*, 960 F. Supp. 867, 872 (D. N.J. 1997).

The Bureau's decision to deny early release to persons convicted of being a felon in possession of a firearm is rationally related to a legitimate governmental interest in discouraging the unlawful use of weapons and in protecting the public from potentially violent criminals. *See Perez*, 157 F. Supp. 2d at 796. The Court therefore concludes that the Bureau did not violate the petitioner's right to equal protection of the law by denying him early release under section 3621(e)(2)(B).

## D.

The petitioner's final claim is that the Bureau's 1997 program statement may not be used to deny early release under section 3621(e)(2)(B), because the program statement was not classified as a legislative rule. This argument is based on *Bohner v. Daniels*, 243 F. Supp. 2d 1171 (D. Oregon 2003), and *Hobbs v. Hemingway*, No. 04-CV-70678-DT (E.D. Mich. July 16, 2004) (Roberts, J.). The District Court in *Bohner* held that the Bureau's 1997 program statement could not used to deny early release under section 3621(e) because the Bureau did not promulgate the statement in compliance with the "notice and comment" procedures of the APA. The district court held in the

alternative that the 1997 program statement merely interpreted the 1997 interim regulation, which was invalid because it was not promulgated pursuant to the "notice and comment" provision of the APA, and thus, there was no rule left for the program statement to interpret.

The court agreed with the reasoning in *Bohner* and adopted its rationale in *Hobbs*. The *Hobbs* court nevertheless held that the Bureau could employ other valid considerations or valid regulations when making a decision.

<p style="text-align:center">1.</p>

Section 553(b) of Title 5, United States Code, requires administrative rules to be published in the Federal Register. The subsection does not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). Publication of a substantive rule must be made no less than thirty days before its effective date. 5 U.S.C. § 553(d).

The Sixth Circuit recently distinguished substantive rules from interpretative rules, stating that, "'[f]or purposes of the APA, substantive rules are rules that create law,' while in contrast '[i]nterpretive rules merely clarify or explain existing law or regulations and go to what the administrative officer thinks the statute or regulation means.'" *Dismas Charities, Inc. v. United States Dep't of Justice, Fed. Bureau of Prisons*, 401 F.3d 666, 679 (6th Cir. 2005) (quoting *First National Bank v. Sanders*, 946 F.2d 1185, 1188-89 (6th Cir. 1991)). The Sixth Circuit went on to say:

> The distinction reflects the primary purpose of Congress in imposing notice and comment requirements for rulemaking – to get public input so as to get the wisest rules. That purpose is not served when the agency's inquiry or determination is not "what is the wisest rule," but "what is the rule." The interpretative rule exception reflects the idea that public input will not help an agency make the legal determination of what the law already is. The D.C. Circuit, for instance, in applying

<p style="text-align:center">-12-</p>

the interpretative rule exception, has "generally sought to distinguish cases in which an agency is merely explicating Congress' desires from those cases in which the agency is adding substantive content of its own." *American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987). *Cf. Sentara-Hampton Gen. v. Sullivan,* 980 F.2d 749, 759 (D.C. Cir. 1992) ("the 'interpretative rule' exception was designed to provide agencies with a degree of flexibility where 'substantive rights are not at stake'").

. . . .

It is true that once an agency gives a regulation an interpretation, notice and comment will often be required before the interpretation of that regulation can be changed. *See Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 629 (5th Cir. 2001); *Alaska Prof'l Hunters Ass'n v. Fed. Aviation Adm'n,* 177 F.3d 1030, 1033-34 (D.C. Cir. 1999). This is because once an agency has promulgated its own regulation, a change in the interpretation of that regulation is likely to reflect the agency's reassessment of wise policy rather than a reassessment of what the agency itself originally meant. The determination of wise policy – unlike legal interpretation – is the kind of determination for which notice and comment procedures are particularly appropriate. However, when an agency is changing its interpretation of a statute, it is much more likely that the agency is not trying to determine what is the wiser rule, but rather what is the rule. Thus, in *Alaska Hunters*, the D.C. Circuit explained that "an agency has less leeway in its choice of the method of changing its interpretation of its regulations than in altering its construction of the statute" because "'[r]ule making,' as defined in the APA, includes not only the agency's process of formulating a rule, but also the agency's process of modifying a rule." 177 F.3d at 1034. Agencies in contrast cannot modify a statute, and statutory interpretation can therefore more easily be distinguished from legislative rulemaking.

*Id*. at 680, 682. A rule does not lose its interpretative nature because of its substantial impact or because it takes a new position and departs from the Bureau's prior interpretation of section 3621. *Id*. at 681.

The "rules" in question in *Dismas Charities* were two legal memoranda written by employees of the Bureau. The Sixth Circuit determined that the memoranda were "paradigm examples of interpretative rules," and that the "[t]he rulemaking requirements of § 553 of the APA do not apply to 'interpretative rules.'" *Id*. at 679-80. The court of appeals held that a rule

embodying "a pure legal determination of what the applicable law already is does not require notice and comment under APA § 553(b)." *Id*. at 682.

The disputed "rule" in this case is Program Statement 5162.04. The stated purpose and scope of the program statement is to assist in the implementation of certain policies and programs of the Bureau. *See* Resp. to Pet. for Writ of Habeas Corpus, Ex. 5, Program Statement at 1. The expected result of the program statement was that inmates would be denied the benefits of certain programs if the inmate's underlying offense was deemed a crime of violence or if the offense was identified by the Director of the Bureau as one that precluded receipt of program benefits. *Ibid.*

The program statement and the 1997 interim regulation shifted the Bureau's attention from the statutory meaning of "nonviolent offense" to interpreting the extent of the Bureau's discretionary authority under the statute. *Boucher*, 90 F. Supp. 2d at 890. The program statement clarifies the existing statute and explains what the Bureau thinks the statute means. It does not change the interpretation of the regulation, and it does not make law; rather, it says what the law is. The Court therefore concludes that Program Statement 5162.04 is an interpretive rule.

The Court finds support for this conclusion in *Reno*, 515 U.S. at 61, wherein the Supreme Court stated that one of the Bureau's program statements was an internal agency guideline, which was akin to an interpretive rule that does not require notice and comment under the APA. The Court finds further support for its conclusion in *Gunderson v. Hood*, 268 F.3d 1149 (9th Cir. 2001). The Ninth Circuit held in *Gunderson* that Program Statement 5162.04 is an interpretive statement, which merely clarified or explained existing law. *See id.* at 1154-55. Because Program Statement 5162.04 is an interpretative rule, not a substantive rule, the Bureau was not required to promulgate the statement pursuant to APA procedures.

-14-

2.

The Bureau's 1997 interim regulation arguably was a substantive rule, *see Gunderson*, 268 F.3d at 1154, and it became effective before the public was given notice or an opportunity to comment on it. In *Lopez*, the Supreme Court declined to address the issue of whether the interim regulation was issued in compliance with the APA, because the issue was not raised or decided in the lower court, nor presented in the petition for certiorari. *Lopez*, 531 U.S. at 244 n.6. Assuming, without deciding, that the interim regulation was not promulgated in compliance with the APA, it "is invalid as to persons disqualified prior to the issuance of the final rule." *Grier v. Hood*, 46 Fed. Appx. 433, 439 n.2, 2002 WL 1997873, at **1 n.2 (9th Cir. Aug. 29, 2002); *Sizemore*, 2005 WL 1684132 at *4; *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).

The petitioner enrolled in the Bureau's drug treatment program on June 7, 2004. By then, the interim regulation had been replaced with a final regulation, *see* 65 Fed. Reg. 80745-49, following notice and an opportunity to be heard. The final regulation complied with the "notice and comment" requirement of the APA, and Program Statement 5162.04 interprets a valid regulation. The Bureau did not err when it relied on the Program Statement to deny early release to the petitioner.

IV.

The Court finds that the Bureau's decision to deny the petitioner early release for successful completion of a drug treatment program was not arbitrary or capricious and did not violate the petitioner's rights to due process or equal protection of the law. Nor did the Bureau's alleged violation of the APA preclude it from denying early release under section 3621(e)(2)(B).

-15-

Accordingly, it is **ORDERED** that the petition for the writ of habeas corpus [dkt #1] is **DENIED.**  The petitioner's requests within the petition for appointment of counsel and oral arguments likewise are **DENIED**.

<div style="text-align:right">

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

</div>

Dated: December 13, 2006

<div style="border:1px solid black; padding:8px; text-align:center">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 13, 2006.

s/Felicia M. Moses
FELICIA M. MOSES

</div>

-16-